Matter of Paratore (Bankers Life & Cas. Co.--Commissioner of Labor) (2021 NY Slip Op 06405)





Matter of Paratore (Bankers Life & Cas. Co.--Commissioner of Labor)


2021 NY Slip Op 06405


Decided on November 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 18, 2021

531519
[*1]In the Matter of the Claim of Paul Paratore, Respondent. Bankers Life and Casualty Company, Appellant. Commissioner of Labor, Respondent.

Calendar Date:October 19, 2021

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and Colangelo, JJ.

Littler Mendelson, PC, Fairport (Pamela S.C. Reynolds of counsel), for appellant.
David E. Woodin, Catskill, for Paul Paratore, respondent.
Letitia James, Attorney General, New York City (Linda D. Joseph of counsel), for Commissioner of Labor, respondent.



Colangelo, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed November 21, 2019, which ruled that Bankers Life and Casualty Company was liable for unemployment insurance contributions based upon remuneration paid to claimant and others similarly situated.
In May 2015, claimant, a licensed insurance broker and agent during the time period in question, entered into a written agreement with Bankers Life and Casualty Company (hereinafter BLC) to sell annuity and health and life insurance policies.[FN1] In August 2016, BLC's relationship with claimant came to an end, prompting claimant to file a claim for unemployment insurance benefits. Thereafter, the Department of Labor issued a determination finding that claimant was eligible for benefits based upon remuneration paid to him and others similarly situated. BLC objected and requested a hearing. Following a hearing, an Administrative Law Judge overruled BLC's objection and sustained the Department's determination. Upon review, the Unemployment Insurance Appeal Board affirmed the decision of the Administrative Law Judge, finding that claimant's services were not statutorily exempted from the term employment under Labor Law § 511 (21) and that the credible evidence established that BLC exercised, or reserved the right to exercise, sufficient supervision, direction and control over claimant's services to create an employment relationship under the unemployment insurance law. BLC appeals.
BLC initially contends that its written agreement with claimant satisfied the requirements of Labor Law § 511 (21) by setting forth the seven statutorily-enumerated provisions in their agreement, thereby excluding the services provided by claimant from the definition of "employment" and rendering him ineligible to receive unemployment insurance benefits. However, for the reasons stated more fully in Matter of Gabel (Banker's Life and Casualty Co.-Commissioner of Labor) (___ AD3d ___, ___ [decided herewith]), we agree with the Board that the mere inclusion of the statutory provisions in their written agreement, by itself, does not automatically satisfy the statute if, as the Board found the case to be here, some aspects of claimant's services did not conform to the statutorily-required provisions set forth in their written agreement. Indeed, the statute requires not only the inclusion of the seven statutory provisions in the parties' written agreement but also that the services performed by the insurance agent or broker actually be consistent with those provisions (see Labor Law § 511 [21] [c]-[d]). Because there is evidence in the record before us demonstrating that at least some aspects of claimant's services were performed in a manner inconsistent with the statutorily-required provisions in their written agreement, we find that the requirements of Labor Law § 511 (21) were not met. As such, we turn to BLC's challenge to the Board's finding that an employment relationship existed under the common[*2]-law test.
"Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1859 [2020] [internal quotation marks and citations omitted]; see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136 [2020]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 136-137 [internal quotation marks, brackets and citations omitted]). "Traditionally, the Board considers a number of factors in determining whether a worker is an employee or an independent contractor, examining all aspects of the arrangement. But the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results" (id. at 137 [internal quotation marks, brackets and citations omitted]; see Matter of Mayo [Epstein-Commissioner of Labor], 193 AD3d 1199, 1200 [2021]; Matter of Jordan [Alterna Holdings Corp.-Commissioner of Labor], 187 AD3d 1264, 1265 [2020]).
Here, BLC advertised for insurance agents or brokers and, when claimant responded to a solicitation letter that he had received in the mail from BLC, it conducted the initial interview and screening and provided claimant with training, which included joint sales calls during which a manager would assist claimant. BLC also, among other things, set its products' prices, paid claimant according to a commission schedule that it established and that it could alter any time in its sole discretion, handled customer complaints, did not allow claimant to assign the written agreement without the prior written consent of BLC, maintained ownership of all policyholder data, records, material and supplies that were furnished to claimant during the course of business and required claimant to return such items to BLC after termination of the agreement and prohibited claimant from soliciting or servicing BLC's policy holders for two years following the termination of the their written agreement. BLC provided claimant with sales leads and required claimant to promptly pursue those leads for only BLC's business. BLC reviewed insurance policy applications submitted by claimant and reserved the right to accept or reject those applications in its discretion. BLC also paid commissions in advance and, to do so, withheld 10% of an agent's commission until he or she banked $1,000 in sales. BLC required claimant to be in the office [*3]twice a week to use its own software system, or an approved software system, to solicit new customers by telephone and required claimant to notify his branch manager if he was taking time off from providing services to BLC. BLC provided claimant with an office, secretarial support and paid for the cost of his initial order of business cards bearing BLC's name on them. BLC also scheduled periodic compliance and product trainings that claimant was required to attend at the branch office and also provided claimant with the opportunity to attend training in other subject areas. Claimant was required to provide periodic progress reports to BLC, and BLC's branch manager would discuss them with claimant and review his weekly progress.
Notwithstanding the existence of evidence in the record that could support a contrary determination, the foregoing proof and testimony credited by the Board constitutes substantial evidence to support the Board's finding of an employment relationship between BLC and claimant (see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d 1190, 1192 [2021]; Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d at 1134-1135). "Although it is unclear whether the Board expressly considered the relevant guidelines adopted by the Department in ascertaining claimant's employment status as an insurance broker (see New York State Department of Labor, Guidelines for Determining Worker Status: Insurance Sales Industry [Nov. 2013]), we discern no inconsistency between either the guidelines and the common-law employer-employee test or the guidelines and the Board's decision" (Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1192-1193; see Matter of Joyce [Coface N. Am. Ins. Co.-Commissioner of Labor], 116 AD3d at 1135; compare Matter of Lee [AXA Advisors LLC-Commissioner of Labor], 196 AD3d 975, 976 [2021]). Finally, contrary to BLC's contention, the Board properly held that its finding of an employment relationship applied to all others similarly situated to claimant (see Labor Law § 620 [1] [b]; Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1860 [2020]; Matter of Mitchum [Medifleet, Inc.-Commissioner of Labor], 133 AD3d 1156, 1157-1158 [2015]; Matter of Robinson [New York Times Newspaper Div. of N.Y. Times Co.-Hartnett], 168 AD2d 746, 747-748 [1990], lv denied 78 NY2d 853 [1991]). To the extent that BLC's remaining contentions that are properly before us have not been specifically addressed, they have been examined and found to be lacking in merit.
Garry, P.J., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: Although claimant entered into a written agreement with BLC in 2015, he had a relationship with, and provided services for, BLC beginning in January 2011.